1  **BRIAN Y.K. CHING, SBN 079456**
   **Law Offices of Brian Y.K. Ching**
2  512 Westline Drive, #204
   Alameda, CA 94501
3  Telephone: 510-769-0200
   Telefax:    510-769-0335
4
   Attorneys for Defendants
5



6

7                  UNITED STATES DISTRICT COURT

8              FOR THE NORTHERN DISTRICT OF CALIFORNIA

9  | FENG CHEN, and GUI RUI GUAN, | Case No. C07 04433 CRB |
   |---|---|
10 | Plaintiffs, | MOTION TO COMPEL PLAINTIFF'S FENG CHEN'S DEPOSITION; EXHIBITS; POINTS & AUTHORITIES IN SUPPORT THEREOF |
11 | vs. | |
12 | GOLDEN EAGLE GROUP, INC., dba PEKING PALACE, et al., | Date: 10/17/08 Time: 10 AM Place: Courtroom 8 19th Floor |
13 | | |
14 | Defendants. | |

15

16
                    **I. STATEMENT OF FACTS**
17
         Plaintiff Feng Chen was formerly employed by defendant Golden Eagle Group, dba
18
   Peking Palace, a Chinese restaurant doing business in Napa County, California.  Plaintiff
19
   contends that while employed at Peking Palace he regularly worked in excess of 8 hours in one
20
   day or 40 hours in one week and was not paid overtime wages, but merely received a fixed
21
   salary.  Plaintiff has charged defendants with violation of a number of California Labor Code
22
   provisions and Wage Orders, as well as violation of the federal Fair Labor Standards Act, and
23
   seeks to recover unpaid wages and penalties.
24
         Defendants contend that plaintiff Feng Chen actually approached defendants with a
25
   proposal that he be paid part of his wages "under the table."  Feng Chen convinced defendants to
26
   pay him a portion of his wages in cash and not to reflect the full amount of wages paid him in his
27

28

-1-
MOTION TO COMPEL DEPOSITION OF PLAINTIFF, FENG CHEN; POINTS & AUTHORITIES, EXHIBITS IN SUPPORT THEREOF

pay statements so that he could receive government assistance benefits based on low-income qualifications, including Section-8 housing, food stamps, and other similar benefits.

After the last Case Management Conference the parties agreed on a date (June 18, 2008) for the deposition of plaintiff, Feng Chen.

Plaintiff's attorney, Adam Wang, and Defendant's attorney Brian Ching discussed the case and the plaintiff's deposition. Plaintiff's attorney, said that he would instruct the plaintiff not to answer any questions regarding governmental assistance to plaintiff on the grounds that such information was private and irrelevant.

A meet and confer letter (Exhibit A) was sent to plaintiff's counsel indicating defendant's intension to move for a motion to compel. Plaintiff did not respond the meet and confer letter.

Defendant moves the court for an order to compel plaintiff to answer questions regarding income based governmental assistance received by plaintiff.

## II. POINTS & AUTHORITIES

### DEFENDANT'S MOTION TO COMPEL SHOULD BE GRANTED BECAUSE PLAINTIFF HAS MADE IT CLEAR THAT HE WILL NOT RESPOND TO RELEVANT QUESTIONS.

Motion to compel plaintiff to attend deposition should be granted even though plaintiff has not yet failed to appear, because correspondence made it clear that he would not submit to oral examination. Albert v. Starbucks Coffee, Co. Inc., 213 Fed. Appx .1 (D.C. Cir. 2007), cert. Denied, 127 S. Ct. 2944, 168 L. Ed. 2d 270 (U.S. 2007).

In this case, it was made clear that the plaintiff would not answer questions regarding income based governmental assistance received by him.

### DEFENDANT'S MOTION TO COMPEL SHOULD BE GRANTED BECAUSE DEFENDANT'S QUESTIONS REGARDING PLAINTIFF'S INCOME BASED GOVERNMENTAL ASSISTANCE ARE RELEVANT.

Parties are permitted to obtain discovery regarding any matter, not privileged, which is relevant to subject involved in pending action. EEOC v. Klockner H & K Mach. (1996) ED 168, FRD 233, 71 BNA FEP Cas 833.

Defendant maintains that the parties' agreement concerning Feng Chen's employment was an illegal contract contrary to express provisions of law and with an illegal object, namely, to enable plaintiff Feng Chen to receive government assistance benefits by means of fraud. Thus the illegal employment contract is void and unenforceable.

Moreover, under the equitable doctrine of "clean hands," the court will not aid in the commission of a fraud by enforcing a contract, nor relieve one of the parties to a fraud from its consequences, where both are *in pari delicto*. In this case, plaintiff Feng Chen and defendants were equally at fault in this scheme to hide the true amount of compensation Feng Chen received from his employment. The doctrine of unclean hands precludes plaintiff from bringing this action to recover further compensation based on his fraudulent scheme.

### **The parties' employment agreement was an illegal contract and is void. The object of the agreement was illegal.**

The object of a contract must be lawful. Civil Code § 1550. A contract is illegal and void if the object of the contract is unlawful. Civil Code § 1598. An agreement is not lawful that is (1) contrary to an express provision of law; (2) contrary to the policy of express law, although nor expressly prohibited; or (3) otherwise contrary to good morals. Civil Code § 1667; *McIntosh v. Mills* (2004) 121 Cal.App.4th 333, 344.

In *McIntosh*, a non-lawyer sued to enforce a fee-sharing agreement with an attorney. The court held that, because fee-sharing agreements between lawyers and non-lawyers are expressly prohibited by a California rule of professional conduct, the object of the contract was illegal, and it did not matter that the non-lawyer trying to enforce the contract was not subject to that rule. The doctrine of illegality considers whether the object of the contract is illegal, and does not turn on whether the illegality applies to the party seeking to enforce the agreement. *Id.* at 346.

In this case, the object of the agreement between the parties to pay part of Feng Chen's wages in cash and not report it to government agencies was to conceal Feng Chen's true income

1  from federal, state, and county agencies so that he could qualify for government benefits that are
2  tied to low-income qualifications.  These actions were in clear violation of Welfare &
3  Institutions Code § 10980, which provides that any person who willfully, with intent to deceive,
4  makes a false statement or fails to disclose a material fact in order to obtain aid is guilty of a
5  misdemeanor and is subject to imprisonment for up to six months and a fine of up to $500.

### An illegal contract is not enforceable.

In *Homani v. Iranzadi* (1989) 211 Cal.App.3d 1104, a lender brought an action to collect the balance due on a promissory note, which expressly stated that the note would bear no interest.  But the lender testified that the parties had an oral agreement for the payment of interest, and that the "no interest" provision was to avoid reporting interest income for state and federal income tax purposes.  Since the contract was for an illegal purpose—i.e., to avoid compliance with tax regulations—it was void and the lender was not entitled to relief from the court.  *Id.* at 1112-1113.  " ' No principle of law is better settled than that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out . . . .' " *Id.* at 1111.

*Kashini v. Tsann Kuen China Enter. Co.* (2004) 118 Cal. App.4th 531, was a breach of contract action stemming from a written contract to establish a corporation in Iran and to build a plant there for the manufacture and sale of computer products.  After the plaintiffs had set up the plant, the defendants ceased doing business in the computer industry and did not proceed with the agreement.  The trial court granted the defendants' motion for summary judgment on the ground that the alleged agreement was unenforceable because it was illegal and against public policy.  *Id.* at 537.  The contract violated presidential executive orders and implementing regulations that prohibited any United States person from engaging in any transaction directly or indirectly involving the export, sale, or supply of goods, technology, or services to Iran.

MOTION TO COMPEL DEPOSITION OF PLAINTIFF, FENG CHEN; POINTS & AUTHORITIES, EXHIBITS IN SUPPORT THEREOF

*Yoo v. Robi* (2005) 126 Cal.App.4th 1089, involved an action by a personal manager against a widow to recover a commission allegedly due him under personal management contracts with the widow's late husband, who had been a member of The Platters singing group. While the action was pending, the defendant filed a petition with the California Labor Commissioner alleging that, throughout the contract period, the plaintiff acted as an unlicensed talent agency while procuring engagements for the singer, and thus the contract providing for commissions for the plaintiff's services were void as a matter of law. When the Commissioner ruled in the defendant's favor, the court declared all contracts between the parties to be void and unenforceable, and dismissed the complaint. The appellate court concluded that substantial evidence supported the trial court's finding that the plaintiff procured singing engagements in violation of the Talent Agencies Act (Labor Code § 1700), and thus the contracts were void and barred his recovery of a commission for procuring a recording contract.

**The illegal agreement is not severable and thus the entire employment agreement is void.**

Civil Code § 1599 provides that, where a contract has several distinct objects, of which one at least is lawful and one at least is unlawful, a court may sever the contract and enforce the lawful portion.

In *Yoo v. Robi, supra,* 126 Cal.App.4th at 1103-1104, the court noted that an unlicensed party who contracts to procure employment for an artist is barred from recovering commissions for any activities under the contract. *Id.* at 1103-1104. The rationale for denying recovery even for activities that are legal is based on the public policy to deter personal managers from engaging in illegal activities. The court noted that Civil Code § 1599 authorizes a court to sever the illegal object of a contract from the legal, but it does not require a court to do so. "The decision whether to sever the illegal term of a contract in informed by equitable considerations." *Id.* at 1105. The court held that the public policy is best effectuated by invalidating the entire

1  contract and denying all recovery so that personal managers will be more careful to avoid
2  unlawful activities. *Ibid.*

3  In this case, the strong public policy against obtaining government welfare benefits by
4  means of fraud dictates that the entire employment contract should be declared void and
5  unenforceable as a deterrent to such illegal and fraudulent conduct.

**The parties herein are *in pari delicto* and plaintiff should be precluded from seeking further compensation under the illegal employment contract.**

9  A court will not enforce an illegal contract if the parties are *in pari delicto,* i.e., in equal
10  wrong, or if there is an overriding public interest to be served by voiding the agreement.
11  *McIntosh v. Mills* (2004) 121 Cal.App.4th 333, 347. If the illegality stems from the violation of
12  a statute (*malum prohibitum*) and the contract is not contrary to common standards of morality
13  (*malum in se),* the contract could be enforced despite its illegality if the parties are not *in pari*
14
15  *delicto. Id.* at 344, n. 10. This exception allows an illegal contract to be enforced where the
16  party seeking enforcement is less morally blameworthy than the other party and there is no
17  overriding public interest against enforcement of the agreement. *Id.* at 347.

18  In *McIntosh*, the court found that the parties were *in pari delicto,* and refused to enforce
19  the agreement. *Id.* at 350. The court found that the parties "jointly planned a scheme" and that
20  "[t]he purpose of the parties' machinations was a deliberate effort to keep the existence of the
21  fee-sharing agreement, and the details of the deal, from Bank of America and its counsel, and
22
23  even from Mill's own law partners." *Id.* at 351.

24  A case with some parallels to this one is *Lewis v. Ferrari* (1939) 34 Cal.App.2d Supp.
25  767, which involved a female employee who voluntarily worked as a retail clerk in a liquor store
26  for more than 48 hours per week and was paid $16 per week. A statutory limitation of the time
27  prohibited female employees from working more than 48 hours per week. She kept a false
28  record of her hours showing that she worked no more than 48 hours per week. The court held

-6-
MOTION TO COMPEL DEPOSITION OF PLAINTIFF, FENG CHEN; POINTS & AUTHORITIES, EXHIBITS IN SUPPORT THEREOF

that the employer and employee were *in pari delicto*, that the female employee had voluntarily worked more than 48 hours per week, and that the employment contract was void and unenforceable. *Id.* at 774-775.

In *Bartholomew v. Heyman Properties* (1955) 132 Cal.App.2d Supp. 889, an apartment house manager brought an action to recover wages for overtime work. The court found that the nature of her duties required her to work 84 hours per week, but that she had violated no law by doing so, while the employer had committed two misdemeanors by permitting her to work more than the maximum hours and in failing to keep records. The court found that the employee who was paid less than the minimum wage was not *in pari delicto* with the employer who had violated the minimum wage statute. *Id.* at 895-896.

The court distinguished *Lewis v. Ferrari, supra,* stating that "the employee engaged in a conspiracy with the employer to keep false records of the hours worked so as to show that the employee had not worked more than the maximum hours permitted by law." *Bartholmew, supra,* 132 Cal.App.2d Supp. at 895.

An Attorney General Opinion noted the distinction between the cases, stating that "California law generally does not apply the *pari delicto* rule to the normal situation of an employee claiming unpaid wages." 50 Cal. AG (1967) 144, n. 2. The opinion noted that *Lewis v. Ferrari* was limited to its facts:

> [A] bookkeeper conspired with her employer in keeping a "time-book" which deliberately understated her hours to avoid a record of violation of the minimum wage law, then sued the employer for full pay for the deliberately understated hours and was denied recovery as being *in pari delicto* with her employer.
> 50 Cal. AG 144, n.2.

The facts and holding of *Lewis v. Ferrari* are controlling here. Plaintiff and defendant, *at plaintiff's suggestion*, conspired to receive part of his wages in cash and to deliberately understate his hours of work so that he would be able to collect government aid. The parties are *in pari delicto* in their violation of wage and hour laws. If anything, plaintiff is more at fault for

-7-
MOTION TO COMPEL DEPOSITION OF PLAINTIFF, FENG CHEN; POINTS & AUTHORITIES, EXHIBITS IN SUPPORT THEREOF

suggesting a scheme that was designed to permit him to collect government benefits fraudulently based on false reported income. He should not be able to sue defendant for additional pay for the deliberately understated hours. Moreover, his conduct is not merely a technical violation of statutes, but is based on willful intent to defraud the government—action involving moral turpitude.

### Equitable principles dictate that plaintiff should not be permitted to bring this action. Plaintiff should not be permitted to take advantage of his own wrong.

The equitable principle that "no one can take advantage of his own wrong" has been codified in Civil Code § 3517. The underlying principle is that courts of equity will not assist a party to a fraudulent scheme or a person whose claims for relief rest on illegal transactions. See e.g., *Reynolds v. Roll* (1954) 122 Cal.App.2d 826, cert.den.348 U.S. 832.

This case is an appropriate one for application of this basic equitable principle. Plaintiff has conspired with defendant to lie about his income so that he can fraudulently obtain government benefits. Under the agreement between the parties, plaintiff was paid partially in cash. Now he seeks to obtain additional compensation based on the deliberately under-reported hours and false time sheets. It would be unjust to allow him to take advantage of his own wrong and his own scheme to secure even greater compensation based on false reports of his wages and hours worked.

### The doctrine of "unclean hands" estops plaintiff from recovering here.

A cornerstone of equitable principles holds that one who comes into equity must come with clean hands. This maxim closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he or she seeks relief, however improper may have been the behavior of the defendant. In California, the doctrine of unclean hands may apply to legal as well as equitable claims. *Murillo v. Rite Stuff Foods, Inc.* (1998) 65 Cal.App.4th 833, 844.

-8-
MOTION TO COMPEL DEPOSITION OF PLAINTIFF, FENG CHEN; POINTS & AUTHORITIES, EXHIBITS IN SUPPORT THEREOF

1  In *Murillo*, an employee brought an action against her former employer for wrongful
2  discharge, sexual harassment, and other contract and tort claims. The court held that the
3  unclean-hands doctrine would bar those claims as a matter of law since it was undisputed that the
4  plaintiff obtained false resident alien and Social Security cards and then used them to obtain her
5  employment with the defendant. *Id*. at 845. The court held that her misrepresentation went to
6  the heart of the employment relationship and related directly to her wrongful discharge and
7  contractual claims. The doctrine did not bar her discrimination and tort claims as a matter of law
8  because her alleged injuries were not a consequence of her fraud but of her supervisor's
9  despicable conduct and her employer's tolerance of that conduct. *Id*. at 851.
10
11  In *Blain v. Doctor's Co.* (1990) 220 Cal.App.3d 1048, the court noted that the clean-
12  hands maxim is not peculiar to equity, but is a "picturesque phrase" applied to a general principle
13  running through damage actions as well. This principle is that the plaintiff's fault is often an
14  important element in the judicial settlement of disputes, as well as the defendant's fault. *Id*. at
15  1059. California has taken the position that the defense is available in a legal action.
16  *Fibreboard Paper Products Corp. v. East Bay Union of Machinists, etc.* (1964) 227 Cal.App. 2d
17  675, 728.
18
19  In *Blain, supra*, the issue was whether the doctrine of unclean hands precluded an action
20  for legal malpractice by a physician who, in an underlying medical malpractice case, followed
21  the advice of his lawyer to lie at a deposition. After exhaustively examining the case law, the
22  court set forth the following factors that recent California courts have considered in determining
23  whether the defense should be sustained:
24
25  (1) Is the doctrine generally a defense to the relevant claim, or if not, does analogous case
26  law support sustaining the defense?
27
28  (2) Does the nature of the misconduct justify sustaining the defense?

(3) Does the relationship of the misconduct to the claimed injuries warrant sustaining the defense?

In applying these factors to this case, it is clear that *Lewis v. Ferrari, supra*, applied a similar equitable principle as a defense to a claim for unpaid overtime wages and related wage order violations. The court denied recovery to a female employee who had conspired with her employer to understate the hours she actually worked. The court concluded that this conduct precluded her from bringing an action against the employer for recovery of full pay for the deliberately understated hours. This is precisely the situation here.

Second, the nature of plaintiff's misconduct justifies sustaining the defense. In this case, plaintiff has knowingly and willfully conspired to violate wage and hour laws for an additional illegal purpose: to defraud the government by obtaining aid that he would not otherwise qualify for if his wages had been stated in full.

The relationship between the misconduct and the claimed injuries warrants application of the defense. At plaintiff's suggestion, he and his employer agreed that he would be paid part of his wages in cash and that his time cards and wage statements would under-report the number of hours he actually worked and the amount he was actually paid. The purpose of this plan was a scheme to allow Feng Chen to qualify to receive government benefits based on false statements of his income. Now he seeks to compound his misdeeds by using the deliberately under-reported wage and hour statements to obtain additional compensation from the employer on top of the unreported cash wages he received "under the table." The illegal conduct in under-reporting plaintiff's wages and hours worked goes to the heart of his claims here. The court should not be party to assisting plaintiff to perpetrate another fraud. Moreover, the strong public policy against fraud in the application for public benefits dictates that plaintiff should not be able to recover on his claims to deter such fraudulent conduct.

1   In this case, as shown by the above, discovery being sought is relevant to this case and
2   plaintiff should therefore be ordered to answer all question relevant to this case income based
3   governmental assistance.

## CONCLUSION

Defendants respectfully request that the court grant this motion to compel plaintiff to answer questions regarding income based governmental assistance received by plaintiff.

August 22, 2008

Respectfully submitted,

Law Offices of Brian Y.K. Ching

_____
BRIAN Y.K. CHING
Attorney for Defendants

-11-
MOTION TO COMPEL DEPOSITION OF PLAINTIFF, FENG CHEN; POINTS & AUTHORITIES, EXHIBITS IN SUPPORT THEREOF

**Law Offices of**
**BRIAN Y.K. CHING**
1412 Powell Street, Suite A
San Francisco, CA 94133
Tel: 415-956-9268   Fax: 415-956-9568

**Via Fax 408-416-0248 & Email**
Law Offices of Adam Wang
12 South First Street, Suite 613
San Jose, CA 95113

June 10, 2008

RE:   Chen v. Golden Eagle Group, Inc.
       C07-04433 CRB

Dear Mr. Wang,

This to confirm our telephone conversation, around 6/02/08, in which you indicated that you will be instructing your clients not to answer any questions regarding their receipts of governmental income base benefits during the period of employment involved in your lawsuit.

I have indicated to you that this information is relevant to defenses in equity of plead by my clients in their answer to your complaint.

Based on the foregoing, I do not think it is constructive for us to start a deposition of your client if he is going to be instructed not to answer these pertinent questions; therefore, I will be making a motion to compel this discovery if we are not able to resolve it otherwise.

Please consider this a Meet and Confer letter, pursuant to F.R.C.P. 26(f) and 30(b)(6).

Please contact me by 6/15/08, so that I will know whether we should go forward with the scheduled deposition or resolve discovery issue through a motion to compel. I will be asking for attorneys free if a motion is necessary.

Very truly yours,

*Brian Y.K. Ching*
Brian Y.K. Ching, Esq.
Mobile: 510-326-8283

EXHIBIT A